**STATE of Tennessee, Appellee,**

v.

**William Wayne CRAIG, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 7, 1983.

Ray E. Cate, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, H. Kenneth Deatherage, Dist. Atty. Gen., Charles Hawk, Edward Bailey, Roger Delp, Asst. Dist. Attys. Gen., Loudon, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, William Wayne Craig, was convicted on Indictment No. 5809 of

concealing stolen property over the value of two hundred dollars ($200.00) and was sentenced to not less than three (3) nor more than three (3) years in the penitentiary.[1] On appeal, the defendant raises a double jeopardy issue, challenges the sufficiency of the evidence, and says that the trial court erred in denying his motion to adjourn. We find merit to the defendant's double jeopardy claim and the case must be dismissed.

In considering the defendant's double jeopardy claim, we first take cognizance of certain facts that were developed at the trial of this case or that otherwise appear in this record.

On March 25, 1981, the police conducted a search of the defendant's premises and other premises adjacent thereto, and they seized a truck and numerous automobile parts and accessories, all of which turned out to be stolen property separately owned by five (5) individuals, namely, William G. Justice, Johnny Whaley, William Jack Hill, Jerry L. Hatmaker, and Tom Sells. We note that the property that belonged to Sells was one (1) automobile bumper.

▉ Unquestionably, all of the stolen property was found in the defendant's possession at the same time, and it was seized as a result of the search conducted on March 25, 1981. Also, the State offered no proof that the stolen goods were received and concealed by the defendant at different times. Therefore, the defendant's violation constituted only one offense of concealing stolen property because the simultaneous possession and concealment of stolen property belonging to multiple persons at the same time do not constitute separate offenses. *Williams v. State,* 216 Tenn. 89, 390 S.W.2d 234 (1965); *State v. McColgan,* 631 S.W.2d 151 (Tenn.Cr.App.1981); *Conner v. State,* 531 S.W.2d 119 (Tenn.Cr.App.1975). Clearly, under these authorities, and in view of the facts and circumstances before us, the defendant's concealment of the property of Justice, Whaley, Hill, Hatmaker, and Sells was but a single transaction and constituted but one offense of concealing stolen property.

▉ Notwithstanding that the State could legitimately allege only one offense of concealing stolen property against the defendant, it originally charged him in five (5) separate indictments, nos. 5494, 5495, 5496, 5498, and 5499, with concealing stolen property concerning each individual owner's property.

Indictment no. 5495 charged the defendant with concealing Tom Sells' "automobile bumper" of the value of "under $200.00." This particular case came on for trial on September 28, 1981, upon the defendant's plea of not guilty. A jury was impaneled and sworn. Before the commencement of proof, the State moved to consolidate the other indictments with indictment 5495. Apparently, the district attorney general was motivated in making his motion because defense counsel had conveyed to him the defendant's position that all of the indictments amounted to only one offense of concealing stolen property. The defendant objected to the State's motion to consolidate, stating that since the jury had already been sworn on indictment no. 5495, and since all of the indictments involved only one offense of concealing stolen property, he was already in jeopardy and that therefore the motion to consolidate was untimely and not in order. The defendant insisted that indictment no. 5495 proceed to trial. The trial judge indicated that he was of the opinion that the cases should "probably" be consolidated, and then he continued the case until the following Monday, stating that: "We will keep the same jury." Defense counsel reiterated his objection to the consolidation of the cases, but stated that he didn't mind "coming back next Monday and trying this case that we're on today."

After the above jury-out proceedings, the jury returned to open court and the trial judge advised and instructed them, among other things, as follows:

There is another complication in the case that was for trial today. There are five

---

1. The defendant's wife, Livie Craig, was also convicted in this case of concealing stolen property. She was placed on probation and has not appealed.

other cases that probably should have been consolidated for trial with this one case, so we are going to reset this case for next Monday and that is going to require you to work another day. You have already been sworn to try this case and the Attorneys are not objecting to you going without starting that trial, but I must caution you, that you are not to discuss any aspects of this case with anyone, not even among yourselves; at this point, you have not heard any proof. You are not to read anything in the papers, as I've already cautioned you, or listen to any reports on the radio, or talk with anyone about any portion of, particularly, this case that might be coming up or any other case that is pending in court during this term. So next Monday morning, whatever any of the other juries are told, it won't matter to panel number four. Panel number four is to report next Monday morning and we are going to try these cases; we are going to consolidate and at this point, there will either be five or six cases, that will be tried together and you will be the jury for that.

Following these instructions and comments by the trial judge, the jurors were dismissed until the following Monday morning, and the record shows thereafter the following colloquy between defense counsel and the trial court:

> MR. CATE: I move the Court, that I respectfully object to Your Honor's comment to the jury about there being five other cases.
>
> THE COURT: That's fine.
>
> MR. CATE: But I'm not going to move for a mistrial, Your Honor.
>
> THE COURT: All right.

Thereafter and before the case came up again on the following Monday, defense counsel was telephonically advised that the trial judge had entered an order of mistrial in the case involving indictment no. 5495. An "Order of Mistrial of Case" bearing the date of October 5, 1981, and signed by the trial judge appears in the record, and it shows that after the jury was impaneled and sworn on indictment no. 5495, a mistrial

was entered, but no reason for the mistrial was stated in the order.

The next development occurred on January 6, 1982, when the grand jury returned the instant indictment (no. 5809), charging the defendant in a single count with concealing stolen property concerning the various items belonging to Justice, Whaley, Hill, and Hatmaker. Obviously, by this time, the State was becoming alert to the possibility that it had erred in bringing the prior separate indictments against the defendant, and that a former jeopardy problem may have become involved due to the prior proceedings on indictment no. 5495, because when the new indictment (no. 5809) came out, significantly all reference to the stolen automobile bumper belonging to Tom Sells was omitted.

At any rate, the defendant filed a plea of former jeopardy to the new indictment (no. 5809), insisting that his former trial on indictment no. 5495 barred his retrial on the instant indictment (no. 5809). In overruling the defendant's plea, the trial court commented that he had declared a mistrial in the former case because he believed he erred in advising the jury about the other indictments against the defendant. Be that as it may, we conclude that the trial court erred in overruling the defendant's plea of former jeopardy.

As we discussed earlier in this opinion, when the facts and circumstances of the case are considered in the light of the law applicable thereto, the State had only one offense of concealing stolen property against the defendant. The stolen automobile bumper belonging to Tom Sells was a part of the stolen property that formed the basis for this one offense. Thus, when the State chose to indict the defendant for concealing Tom Sells' stolen bumper in indictment no. 5495, and allowed that case to go to trial before a jury, duly impaneled and sworn, then jeopardy attached. It is clear that jeopardy attaches once a jury is impaneled and sworn in a court having jurisdiction. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Knight,* 616 S.W.2d 593 (Tenn.1981). Thus,

since the defendant had been once in jeopardy on indictment no. 5495, the State should not have been allowed to retry the defendant on a new indictment charging in effect the same offense. The fact that the State attempted to obviate the jeopardy effect of the first trial by omitting the allegations about Sells' property in the latter indictment is of no legal significance. The offense in both indictments is still the same. As the United States Supreme Court so aptly said in discussing the Fifth Amendment double jeopardy guarantee in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977):

> The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.

432 U.S. at 169, 97 S.Ct. at 2227.

■ Of course, as recognized by our Supreme Court in *State v. Knight, supra,* there are exceptions to the prohibition against double jeopardy, and retrial may be permitted where the former proceedings were terminated by reason of the error or misconduct of the defense, or where the defense sought or consented to a premature termination of the former proceedings. *See Knight, supra,* at 596. Also, jeopardy implications are not present where there was a manifest necessity for the declaration of a mistrial in the former proceeding. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

We find none of these exceptions are present in this case. The defendant did not move for a mistrial. He did not bring about the mistrial by reason of any error or act of misconduct on his part. Also, he did not consent to it. In fact, once the defendant was in jeopardy, his counsel astutely insisted that the case proceed. Further, we see nothing in this record that would show that any circumstances were present that would give rise to a manifest necessity to terminate the former proceeding by declaring a mistrial. The record indicates that the mistrial order was entered by the trial judge *sua sponte* in the absence of the defendant and his counsel, and apparently the jury that had been sworn to try the case. The fact that the trial judge believed he had erred by mentioning to the jury the other indictments against the defendant did not warrant his *sua sponte* action in declaring a mistrial. Assuming *arguendo* that the trial judge's remarks were in error, this error was waivable by the defendant, and as we set forth above, when this matter arose before the jury, the defendant specifically told the trial court that he was not moving for a mistrial because of it.

Therefore, for all of the foregoing reasons, we conclude that the trial court should have sustained the defendant's plea of former jeopardy.

■ Next, we find no merit to the defendant's evidentiary complaint.

We conclude that the jury had ample evidence before it to warrant the conclusion that the defendant was in possession and control of the stolen goods. The State's evidence established that numerous vehicle parts, minus their identification numbers, as well as tools used for removing such numbers, were found in close proximity to the defendant's house. The State's evidence amply refuted the defendant's theory, as advanced through the testimony of his wife, that they had been separated, and that he had not been around their residence for at least four (4) months before the stolen goods were found. The State's evidence established through witnesses, as well as by dated documents, the defendant's presence in the area and his connection to the stolen goods in the months preceding the seizure of the goods. From the possession of recently stolen goods, the jury could infer, as it obviously did here, knowledge that the goods were stolen. Moreover, the fact that many of the vehicle parts had had their identification numbers removed, indicated a concerted effort to conceal the goods, and thus knowledge that the goods were stolen.

Thus, after considering the evidence in the light most favorable to the State, as we are obligated to do on review, we conclude that the evidence is more than sufficient to

support the jury's verdict finding the defendant guilty beyond a reasonable doubt. *T.R.A.P.* 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 Also, there is no merit to the defendant's argument that the trial court's charge on the inference of guilty knowledge that may be drawn from one's possession of recently stolen property impermissibly shifted the burden of proof to him. Our Court rejected a similar claim in *Phipps v. State,* 3 Tenn.Cr.App. 574, 464 S.W.2d 341 (1970). The charge, as given, was correct. *See Turner v. State,* 541 S.W.2d 398 (Tenn. 1976).

 Finally, the defendant contends that his right to a fair trial was infringed upon due to alleged jury fatigue caused by the trial court's denial of his motion for an adjournment, resulting in court being in session until 11:40 p.m. on the first day of trial. We find no merit to this issue.

The record reveals that short recesses were taken during the trial, as well as lunch and dinner breaks. No member of the jury requested an adjournment, nor is there any indication of juror fatigue in the record. The trial court instructed the jury, after delivering the charge of the court, that it was their prerogative whether to begin deliberations that night or the next morning. The jury left the courtroom at 11:20 p.m. and returned twenty minutes later, stating that they wished to resume deliberations the next morning. Court convened the next morning at 8:30 a.m. and the jury returned the verdict at 2:45 p.m. The jury was obviously fully capable of considering the evidence. We find nothing in the record to indicate that the jury's verdict was in any way affected or influenced by the night session of which complaint is made. The defendant concedes in his brief that this issue would not amount to reversible error. After our review of this issue we find no error, reversible or otherwise.

We find that the defendant's double jeopardy claim is meritorious, and therefore his conviction is reversed and the case is dismissed.

CORNELIUS, J., and RICHARD R. FORD, Special Judge, concur.