# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### NOVEMBER SESSION, 1997

FILED

February 24, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9611-CC-00465 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | WARREN COUNTY |
| VS. | ) | |
| | ) | HON. CHARLES D. HASTON |
| LEON WOODLEE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Theft) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF WARREN COUNTY

FOR THE APPELLANT:

BERNARD K. SMITH
P.O. Box 490
McMinnville, TN 37110

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

LISA A. NAYLOR
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM M. LOCKE
District Attorney General
P.O. Box 410
McMinnville, TN 37110

OPINION FILED _____

CONVICTIONS AFFIRMED; REMANDED FOR RESENTENCING

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Leon Woodlee, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Warren County jury of one count of theft of property valued between $1000 and $10,000, two counts of theft of property valued between $500 and $1000, one count of theft of property valued at $500 or less, one count of failing to keep required records, and three counts of possessing an engine or transmission from which the identification number had been removed or defaced.[1] The trial court sentenced him as a Range I standard offender to three years imprisonment for theft between $1000 and $10,000, two years for one count of theft between $500 and $1000, four years for the other count of theft between $500 and $1000, two years for theft less than $500, and thirty days each for one count of failure to keep required records and three counts of possessing an engine or transmission from which the identification number had been removed or defaced. At the sentencing hearing, the trial court ordered the theft sentences to run consecutive to each other, with all remaining counts to run concurrent with each other and concurrent with the theft sentences.[2] In addition, the sentences were ordered to run consecutive to a six-year sentence for which the Defendant was on probation at the time of the present offenses.

In this appeal, the Defendant argues that the evidence is legally insufficient to support the theft convictions, that the jury instruction regarding the inference

---

[1] Tenn. Code Ann. §§ 39-14-103, 39-14-105(1) - (3), 55-5-108(a)(2), 55-5-111.

[2] The judgments contained in the record are inconsistent with the transcripts from both the trial and the sentencing hearing in terms of the convicted offenses and the sentences imposed. We will address these inconsistencies when we consider the Defendant's third issue on appeal.

from possession of recently stolen property is unconstitutional, and that the sentence imposed by the trial court constituted an abuse of discretion in several respects. After reviewing the record, we conclude that the Defendant's issues provide no basis for the reversal of his convictions. We do, however, conclude that the Defendant was erroneously sentenced. Accordingly, we affirm the Defendant's convictions but remand this case to the trial court for resentencing.

We begin with a summary of the pertinent facts, which are not in serious dispute. The Defendant is an automobile mechanic and operates a garage in Warren County, Tennessee. Officer Barry Powers of the McMinnville Police Department was on a routine patrol during the early morning hours of Sunday, November 14, 1993, when he noticed a black Chevrolet Monte Carlo parked on the premises of the Defendant's garage. Powers became suspicious because the car did not have a visible license plate and a car fitting that description had recently been reported stolen. Powers approached the vehicle on foot, shined his flashlight through the windows, and noticed that the steering column of the car had been tampered with in such a way as to raise his suspicions further. As a result, Powers checked the vehicle identification number ("VIN") with the National Crime Information Center ("NCIC") and discovered that Michael Viola had reported the Monte Carlo stolen from Murfreesboro, Tennessee on October 27, 1993.

Other officers soon arrived on the scene, and the Defendant was called to come to his garage. Once there, the Defendant was asked about the Monte Carlo. The Defendant stated that the car appeared on his lot on Saturday morning, the previous day. He assumed someone had dropped it off and opened

the car doors and trunk to see if the owner had left a note detailing what needed to be done to the car. When he could not find a note, he closed and locked the doors and trunk. No one came to the garage on Saturday to inform him about what needed to be done to the car. At the conclusion of the work day, the Defendant left the car as it was. He was not suspicious of these circumstances because it was fairly common for individuals to leave their vehicles for repair while he was not at his garage and come back later to tell him what needed to be done.

Given that the Monte Carlo was listed as a stolen vehicle, officers asked the Defendant if there was anything else on the premises which had appeared under mysterious circumstances. The Defendant pointed out a late-model Chevrolet engine which was on the ground next to the garage. He stated that a man had come by his garage a few days earlier in a truck that was smoking very badly. He asked the Defendant to put in a new engine which he would supply. The Defendant assumed that the engine sitting on the ground next to the garage was an engine which the man in the smoking truck had dropped off. The Defendant did not know the man in the truck nor could he remember his name.

On the ground near the engine was a transmission. According to Officer John Morgan, the Defendant initially gave conflicting statements regarding the origin of the transmission. The Defendant later stated that the man in the smoking truck had expressed a desire to pay for the installation of the engine by giving the Defendant a transmission. The Defendant assumed that this transmission had been dropped off by the man in the truck. Officers were able to determine from the engine and transmission serial numbers that the parts had

come from a 1989 Chevrolet Blazer which Charles Park reported stolen on November 6, 1993.

Officers also discovered that the serial number from an engine in a truck on the premises had been ground off. The Defendant identified the truck as belonging to his son and stated that he had recently installed the engine. When asked about the origin of the engine, the Defendant replied that he could not remember because he had had the engine for more than a year. Officers asked him if he had a receipt or other record with information about the engine. The Defendant replied that he did not have a receipt because he had had the engine for so long and that he did not keep records of engine serial numbers or information of that type.

Officers confiscated the stolen Monte Carlo, the stolen engine and transmission, and the truck with the engine lacking a serial number. Law enforcement officials later decided to run advertisements in the newspaper and on radio stations asking anyone who had recently purchased an engine or transmission from the Defendant to have the parts checked by police. In response to these advertisements, numerous individuals brought vehicles to be checked. Of those individuals, police found four whose vehicles contained parts identified as having been stolen or whose serial numbers had been ground. Those individuals, Jeremy Winfrey, Ronald Wilmore, Jeremy Campbell, and Randy Wanamaker, had each purchased the parts in question from the Defendant.

On January 14, 1994, the Warren County grand jury returned a four-count indictment against the Defendant based on the November 14, 1993, search of the Defendant's garage and discovery of stolen or defaced parts. That indictment, number 6736, is summarized in the following table:

| COUNT | OFFENSE | CODE SECTION | PROPERTY AT ISSUE | ORIGINAL OWNER | DATE AND PLACE OF THEFT |
|-------|---------|--------------|-------------------|----------------|-------------------------|
| 1 | theft >$1000 | 39-14-103; 39-14-105(3) | 1986 Chevy Monte Carlo | Michael Viola | 10/27/93; Murfreesboro, Tennessee |
| 2 | theft >$1000 | 39-14-103; 39-14-105(3) | 1989 Chevy engine and transmission | Charles Park | 11/6/93; Chattanooga, Tennessee |
| 3 | failure to keep records | 55-5-108(a)(2) | 350 cubic inch Chevy engine from son's truck | unknown | not applicable |
| 4 | possession of engine with serial number removed | 55-5-111 | 350 cubic inch Chevy engine from son's truck | unknown | not applicable |

On May 13, 1994, the Warren County grand jury returned a five-count indictment against the Defendant based on the vehicles inspected as a result of the newspaper and radio advertisements. That indictment, number 6775, is summarized in the following table:

| COUNT | OFFENSE | CODE SECTION | PROPERTY AT ISSUE | PURCHASER | ORIGINAL OWNER | DATE AND PLACE OF THEFT |
|-------|---------|--------------|-------------------|-----------|----------------|-------------------------|
| 1 | theft >1000 | 39-14-103; 39-14-105(3) | 1991 Chevy engine | Jeremy Winfrey | William Gaskin | 7/25/93 Norcross, Georgia |
| 2 | theft >500 | 39-14-103; 39-14-105(2) | 1988 Ford engine and transmission | Ronald Wilmore | Clarence Masters | 2/11/93; Duluth, Georgia |
| 3 | theft >500 | 39-14-103; 39-14-105(2) | 1991 Chevy transmission | Jeremy Campbell | Steve Bennett | 10/27/92; Chattanooga, Tennessee |
| 4 | possession of engine with serial number removed | 55-5-111 | 350 cubic inch Chevy engine | Jeremy Campbell | unknown | not applicable |
| 5 | possession of engine with serial number removed | 55-5-111 | 350 cubic inch Chevy engine | Randy Wanamaker | unknown | not applicable |

Upon the State's motion, the two indictments were consolidated for trial. The Defendant was tried from March 28 to March 30, 1995.

At trial, the Defendant did not dispute that the property alleged to have been stolen was in fact stolen. In addition, he did not dispute that the parts alleged to lack serial numbers did not in fact have serial numbers. In short, the Defendant freely admitted that the stolen or defaced property was discovered on his business premises and that he had installed stolen or defaced property in some of his clients' vehicles. His defense focused instead upon his mental state. His chief contention at trial was that he did not knowingly possess stolen or defaced property.

In support of that defense, the Defendant testified that although the black Monte Carlo (indictment #6736, count 1) appeared at his garage without an explanation, lacked a license plate, and contained a steering column which had been tampered with, he did not know that it was stolen. He stated that it was fairly common for individuals to leave vehicles for repair without his knowledge and return later to explain what needed to be done to the vehicles. With regard to the 1989 Chevy engine and transmission stolen from Charles Park (indictment #6736, count 2), the Defendant testified that he believed that the parts were dropped off at his garage by the man in the smoking truck, as he had told Officer Morgan on November 14, 1993. The Defendant was unaware that they were stolen. Moreover, the Defendant offered the testimony of Shirley Jones, who stated that he had overheard part of a conversation between the Defendant and a man in a smoking truck a few days before November 14, 1993. Jones testified

that the conversation concerned a transaction in which the Defendant was going to install an engine in the smoking truck in exchange for a transmission.

With regard to the stolen engines and transmissions which the Defendant installed in customers' vehicles (indictment #6775, counts 1-3), he again claimed that he was not aware that the parts were stolen. He testified that he purchased engines and transmissions from individuals as well as from dealers and salvage yards. The Defendant produced several receipts indicating that he had purchased engines or transmissions from individuals, paying in cash. He admitted, however, that he could not link those specific receipts to the stolen parts installed in customers' vehicles, apparently because he failed to note the serial numbers of the parts involved on the receipts. Furthermore, the Defendant stated that although he attempted to locate the individuals named on the receipts, he was unsuccessful. The Defendant testified that he had never bought an engine or transmission that he knew was stolen and that he had paid the individuals named on the receipts a fair market value for the parts. In addition, the Defendant pointed out that he had reimbursed or purchased new parts for the customers in whose vehicles he had installed stolen or defaced engines or transmissions.

With regard to the charges concerning engines or transmissions with defaced serial numbers (indictment #6736, counts 3-4; indictment #6775, counts 4-5), the Defendant testified that he simply did not look at serial numbers in the course of his business and that he was unaware that he was supposed to record these numbers as part of his record-keeping. In addition, the Defendant stated that other similar businesses in his area did not record serial numbers either.

Given that he did not look for serial numbers, the Defendant testified that he did not knowingly possess engines or transmissions whose serial numbers had been defaced or removed.

The Defendant also offered proof that he frequently worked on vehicles for police officers. In so doing, he never attempted to prevent them from looking around his garage while they waited for their vehicles to be serviced. It is undisputed that the stolen or defaced property which is the subject of indictment number 6736 was in plain view on the Defendant's business premises.

After considering the proof presented at trial, the jury found the Defendant not guilty on count one of indictment number 6736 (theft of the Monte Carlo). On counts two, three and four of indictment number 6736, however, the jury found him guilty as charged. With regard to indictment number 6775, the jury found him guilty as charged on counts two, four and five. On count one, however, charging the Defendant with theft of property valued between $1000 and $10,000, the jury found him guilty of the lesser grade of theft of property valued between $500 and $1000. Likewise, in count three, charging theft of property valued between $500 and $1000, the jury found him guilty of the lesser grade of theft of property valued at $500 or less. The Defendant now appeals to this Court, challenging both his convictions and his sentences.

In his first issue on appeal, the Defendant argues that the evidence was legally insufficient to support his theft convictions. We note that the Defendant does not challenge the sufficiency of the evidence for his convictions dealing with engines or transmissions lacking serial numbers. The Defendant's appellate

challenge to his theft convictions, like his proof at trial, focuses on his mental state. He contends that he received the stolen property at issue under bona fide circumstances, had no reason to believe that the property had been stolen, and was in fact unaware that the property had been stolen. As a result, he argues that he did not knowingly obtain or exercise control over the stolen property.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

A crime may be established by circumstantial evidence alone. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, before an accused may be convicted of a criminal offense based only upon circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, a "web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 484, 613. The weight of the circumstantial evidence and whether every other hypothesis except that of the guilt of the defendant has been excluded by the evidence presented are matters for the jury to determine. State v. Tharpe, 726 S.W.2d 896 (Tenn. 1987); Williams v. State, 520 S.W.2d 371 (Tenn. Crim. App. 1974).

The offense of theft of property is defined as follows: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. It is well-established in Tennessee that the possession of recently stolen property gives rise to an inference that the possessor has stolen it or had knowledge the property was stolen and may, in light of surrounding circumstances, support a conviction for theft. See State v. Land, 681 S.W.2d 589, 591 (Tenn. Crim. App. 1984) (citation omitted); State v. Hamilton, 628 S.W.2d 742, 746 (Tenn. Crim. App. 1981) (citations omitted). Moreover, "the inference arising from the proven fact of possession of recently stolen property is not destroyed by contradictory evidence, even the positive testimony of witnesses . . . ." Bush v. State, 541 S.W.2d 391,

-11-

395 (Tenn. 1976). The force of the inference does not vanish upon the offering of an explanation by the defendant, but rather "remains to be weighed by the jury against the evidence offered by defendant in explanation of his possession of the recently stolen property." Id.; see also, Land, 681 S.W.2d at 591. The jury was instructed on elements of the offense of theft as well as the permissible inference arising from the possession of recently stolen property.

In the case sub judice, the Defendant does not dispute that the items of property which are the subject of the theft convictions were, in fact, recently stolen and were in the possession of the Defendant. At trial, the Defendant offered an explanation for his possession of the recently stolen property, namely that he was unaware that the property had been stolen. Applying the reasoning of Bush, Hamilton and Land to the present case, we believe it was the province of the jury to weigh the evidence presented by the State, including the inference arising from the Defendant's possession of recently stolen property, against the explanation offered by the Defendant. The jury did so in this case, rejected the explanation offered by the Defendant, and found him guilty on four of five theft charges. From our review of the record, we conclude that the evidence presented, along with the inference which may properly be drawn from the possession of the recently stolen property, is sufficient to support the Defendant's theft convictions beyond a reasonable doubt. The Defendant's first issue is therefore without merit.

In his second issue on appeal, the Defendant argues that the jury instruction on the inference arising from possession of recently stolen property is unconstitutional. He contends that the inference instruction, in effect, requires

him to explain his possession of recently stolen property, thereby shifting the burden of proof from the State to him. Thus, he argues that the inference instruction violates the principles set forth in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In the case at bar, the trial court instructed the jury on the inference arising from possession of recently stolen property. The instruction reads as follows:

> Now, if you find beyond a reasonable doubt from the evidence that the property in question has been recently stolen and that soon thereafter the same property was discovered in the exclusive possession of the defendant, his possession, unless satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw an inference that the defendant had knowledge that the property had been stolen. However, you are not required to make this inference. It is for you, The Jury, to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you to draw from the possession of recently stolen property. When evidence is offered that the defendant was in possession of recently stolen property, the defendant has the right to introduce evidence that he came into possession of that property lawfully, or possession may be satisfactorily explained through other circumstances or other evidence independent of any evidence or testimony offered by the defendant. In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that, in the exercise of constitutional rights, the accused need not take the witness stand and testify. The term "recently," of course, is a relative term, and it has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference that may be drawn from an unexplained possession. The correctness of the inference and the weight to be given any explanation that may be drawn by the evidence are matters that must be determined by you, The Jury, and you are not bound to accept either. You must weigh all of the evidence presented as to the defendant's alleged possession of the property in question and decide, in light of all the facts and circumstances present, whether any inference is warranted. You are reminded that the burden of proving the defendant's guilt of the offense beyond a reasonable doubt remains on the State.

This instruction conforms substantially to the one set forth in the Tennessee Pattern Jury Instructions. <u>See</u> T.P.I. -- Crim. 42.20. Furthermore, after instructing the jury on the differences between direct and circumstantial evidence, the trial court charged the jury as follows:

> I have charged you, ladies and gentlemen, concerning certain inferences that you, The Jury, may make regarding certain evidence in the case. However, The Jury is not required to make these inferences. It is the exclusive province of The Jury to determine whether the facts and circumstances shown by all the proof in the case warrant the inference which the law permits you, The Jury, to draw. The inference may be rebutted by direct or by circumstantial evidence or both, whether it exists in the evidence of the State or is offered by the defendant. Although the defendant is not required by law to do so, when the defendant offers an explanation to rebut the inference raised, you should consider such explanation, along with all the evidence, to determine not only the correctness of the inference but also the reasonableness of the defendant's explanation. You are not bound to accept either the inference or the defendant's explanation. The State must prove, beyond a reasonable doubt, every element of the offense before the defendant can be found guilty.

These remarks are the extent of the trial court's instructions regarding the permissible inference arising from possession of recently stolen property.

The Defendant argues that the instructions regarding the inference are unconstitutional in that they impermissibly shift the burden of proof from the State to him. This argument has been repeatedly rejected by Tennessee courts in cases involving instructions similar to the ones given in the present case. <u>See</u> <u>Turner v. State</u>, 541 S.W.2d 398, 401-02 (Tenn. 1976); <u>State v. Craig</u>, 655 S.W.2d 186, 191 (Tenn. Crim. App. 1983); <u>Phipps v. State</u>, 3 Tenn. Crim. App. 574, 581, 464 S.W.2d 341, 344-45, (1970); <u>State v. Jessie F. Harris</u>, C.C.A. No. 01C01-9509-CR-00303, Davidson County (Tenn. Crim. App., Nashville, July 26, 1996). We decline to depart from the sound reasoning announced in these cases. The Defendant's second issue is without merit.

In his third issue, the Defendant argues that the trial court erred in sentencing him in several respects. In particular, he contends that the trial court erred by sentencing him outside the applicable statutory range for two of his convictions, by enhancing his sentences within their ranges, by ordering several of his sentences to run consecutively, and by failing to impose an alternative sentence. For the reasons set forth below, we conclude that the trial court erred in sentencing the Defendant.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court conducted a sentencing hearing on April 28, 1995. The proof relied upon for sentencing was essentially that set forth during the trial. The record does indicate that in September of 1986, the Defendant was charged with altering the vehicle identification number ("VIN") of a pickup truck and selling it to another individual. The Defendant was granted pretrial diversion on those charges and successfully completed his period of diversion. In addition, the Defendant pleaded guilty in January of 1989 to two counts of concealing stolen property over the value of $200. The Defendant was sentenced as a Range I, standard offender to concurrent terms of six years imprisonment. After serving three months incarceration, the Defendant was placed on probation for the remainder of his six-year sentence. He was on probation at the time of the present offenses. According to his probation officer, the Defendant fully complied with the terms of his probation until the commission of the present offenses.

At the conclusion of the hearing, the trial court found four enhancement factors applicable: 1) That the Defendant had a previous history of criminal convictions or behavior in addition to that necessary to establish the range; 2) that the offenses involved more than one victim; 3) that the Defendant had a previous history of unwillingness to comply with the conditions of a sentence

-16-

involving release in the community; and, 4) that the Defendant was on probation from a prior felony conviction at the time of the commission of the offenses. Tenn. Code Ann. § 40-35-114(1), (3), (8), (13)(C).

The Defendant suggested as mitigating factors that he suffered from a heart condition, that he had served in the military, that he had shown remorse over the incidents, that he had made restitution to his customers, and that because of his debts and sole ownership of the garage, incarceration would cause financial ruin. The trial court found one mitigating factor applicable, that the Defendant's conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). The trial court found no substantial merit to the remaining mitigating factors suggested by the Defendant.

The trial court sentenced the Defendant as a Range I, standard offender. Based on the applicable enhancing and mitigating factors, the trial judge set the sentences as follows:

| INDICTMENT, COUNT | CONVICTED OFFENSE | OFFENSE CLASS | APPLICABLE RANGE | SENTENCE IMPOSED | CONCURRENT/ CONSECUTIVE |
|---|---|---|---|---|---|
| #6736, count 2 | theft >$1000 | D felony | 2-4 years | 3 years | consecutive |
| #6736, count 3 | failure to keep required records | C misdemeanor | up to 30 days | 30 days | concurrent |
| #6736, count 4 | possession of engine with serial number removed | C misdemeanor | up to 30 days | 30 days | concurrent |
| #6775, count 1 | theft >$500 | E felony | 1-2 years | 4 years | consecutive |
| #6775, count 2 | theft >$500 | E felony | 1-2 years | 2 years | consecutive |
| #6775, count 3 | theft <$500 | A misdemeanor | up to 11 months, 29 days | 2 years | consecutive |
| #6775, count 4 | possession of engine with serial number removed | C misdemeanor | up to 30 days | 30 days | concurrent |
| #6775, count 5 | possession of engine with serial number removed | C misdemeanor | up to 30 days | 30 days | concurrent |

In ordering the four theft sentences to run consecutively, the trial judge made references to his findings that the Defendant's service as a "fence" for stolen automobile parts allowed others to remain in and profit from the business of stealing vehicles and that the Defendant had failed to respond to less severe sentences. The trial judge did not, however, mention a particular statutory factor in support of consecutive sentences. Given the consecutive nature of the theft sentences, the effective sentence imposed for these offenses was eleven years.

The Defendant requested that the trial court impose some form of alternative sentence. The trial court declined to do so, instead ordering straight confinement. In so doing, the trial court made reference to the Defendant's prior convictions involving circumstances similar to those in the case at bar and his failure at past rehabilitation efforts, namely his prior service of pretrial diversion and probation.

The trial court also revoked the Defendant's probation for his 1989 convictions for concealing stolen property and ordered him to serve the remainder of his six-year term for those offenses. Furthermore, the trial court ordered the sentences for the present offenses to run consecutive to the six-year sentence because the present offenses were committed while the Defendant was on probation. Tenn. Code Ann. § 40-35-115(b)(6).[3]

On appeal, the Defendant first contends that the trial court improperly sentenced him outside the applicable statutory range for two of his convictions,

---

[3] In this appeal, the Defendant does not challenge the revocation of his probation or the order that the six-year term run consecutive to the sentences for his present offenses.

theft of property valued between $500 and $1000 (indictment number 6775, count one) and theft of property valued at $500 or less (indictment number 6775, count three). We agree. It appears that the trial court inadvertently sentenced the Defendant according to the offenses for which he was indicted rather than the offenses for which he was convicted.

In indictment number 6775, the Defendant was charged in count one with theft of property valued between $1000 and $10,000. Tenn. Code Ann. § 39-14-105(3). In count three of that same indictment, he was charged with theft of property valued between $500 and $1000. Tenn. Code Ann. § 39-14-105(2). The trial transcript clearly indicates, however, that the jury found the Defendant guilty of lesser grades of theft for those offenses. More specifically, the jury returned a verdict of guilty of theft of property valued between $500 and $1000 for count one and guilty of theft of property valued at $500 or less for count three. Tenn. Code Ann. § 39-14-105(1), (2). Thus, the Defendant was charged in count one with a class D felony but was convicted of a class E felony. Tenn. Code Ann. § 39-14-105(2), (3). Similarly, the Defendant was charged in count three with a class E felony but was convicted of a class A misdemeanor. Tenn. Code Ann. § 39-14-105(1), (2). The applicable sentencing ranges for a class E felony and a class A misdemeanor are one to two years and up to eleven months and twenty-nine days, respectively. Tenn. Code Ann. §§ 40-35-112(a)(5), 40-35-111(e)(1).

The trial court, however, sentenced the Defendant to four years on count one and two years on count three. The judgments for counts one and three indicate that the trial court found the Defendant guilty of and sentenced according

to the indicted offenses rather than the convicted offenses. Furthermore, the orders entering the guilty verdicts into the minutes of the trial court also reflect that the Defendant was found guilty as charged on counts one and three of indictment number 6775. What caused these errors is unclear. It is clear, however, that these sentences are outside the applicable statutory sentencing range.

We also note that the judgment for count three of indictment number 6736 is inconsistent with the transcript of the sentencing hearing. The judgment for that count (failure to keep required records) indicates that the thirty-day sentence is to be served consecutively. The transcript of the sentencing hearing, however, clearly indicates that the trial court stated that "Counts 4 and 5 of Case No. F-6775, and Counts No. 3 and 4 of F-6736 run concurrent with one another and concurrent with any sentence imposed by This Court." The cause of this inconsistency is unclear.

Given the errors and inconsistencies outlined above, we conclude that we must reverse and set aside the Defendant's sentences and remand this case for resentencing. We will briefly address the Defendant's remaining allegations of sentencing errors to provide guidance to the trial court upon remand and to facilitate possible further appellate review.

The Defendant contends that the trial court improperly applied the enhancement factor applicable to offenses involving more than one victim.[4]

---

[4] The Defendant also contends that the trial court erred in applying the enhancement factor for offenses where the amount of damage to property taken from the victim was particularly great. Tenn. Code Ann. § 40-35-114(6). From our review of the record, we do not believe that the trial court

Tenn. Code Ann. § 40-35-114(3). He argues that this enhancement factor is not applicable because he was convicted of multiple offenses involving separate victims for each offense. We agree that the record before us does not support the application of that enhancement factor.

The trial court made reference to the Defendant's customers in whose vehicles he had installed stolen parts as victims of the thefts in addition to the original owners of the stolen parts. We do not believe that the customers qualify as theft victims for the purpose of this enhancement factor. Simply put, there is no proof that the Defendant knowingly obtained or exercised control over any property of the customers with the intent to deprive them of that property. Thus, because the Defendant was separately convicted for offenses against each victim, the enhancement factor for offenses involving more than one victim is not applicable. See State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995).

The Defendant also challenges the trial court's imposition of consecutive sentences for each of his theft convictions. In reviewing this challenge, we are hampered by the fact that the trial judge did not specify which statutory provision supported his imposition of consecutive sentences. Upon remand, if the trial judge again orders consecutive sentences, he should make specific findings of the statutory provision and facts supporting consecutive sentences. See Tenn. R. Crim. P. 32(c)(1).

---

applied this factor. As we detailed above, the trial court specifically mentioned four factors. Section 40-35-114(6) was not among those four factors.

We do note that in imposing consecutive sentences for the theft offenses, the trial judge made reference to his finding that the Defendant's service as a "fence" for stolen automobile parts allowed others to remain in and profit from the business of stealing vehicles. Presumably the trial court was referring to facts supporting consecutive sentencing pursuant to Tennessee Code Annotated section 40-35-115(b)(1). That section provides that a court may order consecutive sentences upon a finding that the "defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood." From our review, however, we do not believe that the record before us supports consecutive sentencing pursuant to section 40-35-115(b)(1). The State offered no proof at trial or at sentencing that the Defendant's criminal acts were a "major source of livelihood." The record indicates that the Defendant was a popular mechanic and worked on hundreds of vehicles from the time he opened his garage in January of 1992 to the time of the offenses. As the Defendant points out, however, mass media advertisements to locate stolen parts installed by the Defendant yielded only four customers with stolen or defaced parts out of numerous individuals checked by the police. In addition, the record reveals that the Defendant is fifty-seven years old and was gainfully employed prior to the opening of his garage. We do not believe these facts demonstrate that the Defendant's criminal acts were a major source of livelihood. As a result, we conclude that the record before us does not support consecutive sentencing for the Defendant as a "professional criminal" pursuant to section 40-35-115(b)(1). See State v. Linda Culver, C.C.A. No. 01C01-9503-CC-00057, Stewart County (Tenn. Crim. App., Nashville, Nov. 30, 1995).

Finally, the Defendant challenges the trial court's imposition of a sentence of straight confinement rather than some type of alternative sentence. The record indicates that the trial court ordered straight confinement without extensive comment on the Defendant's request for an alternative sentence. The trial judge did make reference to the Defendant's prior convictions involving circumstances similar to those in the case at bar and his failure at past rehabilitative efforts, namely his prior service of pretrial diversion and probation.

Of course, a defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the

least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3) - (4). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103. These considerations which militate against alternative sentencing include: the need to protect society by restraining a defendant having a long history of criminal conduct, whether confinement is particularly appropriate to effectively deter others likely to commit a similar offense, the need to avoid depreciating the seriousness of the offense, and the need to order confinement in cases in which less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1).

In the case sub judice, as the trial court noted, the Defendant was charged in 1986 with altering the VIN of a pickup truck and selling it to another individual. The Defendant was granted pretrial diversion for those offenses. In January of 1989, he pleaded guilty to two counts of concealing stolen property valued in excess of $200 and was sentenced to concurrent terms of six years. After serving three months, he was placed on probation for the remainder of his term. He was indicted on the present charges in January and May of 1994. Given this history of criminal conduct and the failure of less restrictive measures, we cannot conclude that the trial judge abused his discretion by ordering straight confinement. See Tenn. Code Ann. § 40-35-103(1)(A), -103(1)(C).

-24-

We do point out, however, that upon remand the trial judge should consider the Defendant's eligibility for an alternative sentence and the principles set forth in Tennessee Code Annotated section 40-35-103. In setting the manner of service of the sentences, the trial judge should make reference to the relevant statutory provisions and the specific facts supporting his decision.

For the reasons set forth in the discussion above, we conclude that the Defendant's issues on appeal provide no basis for the reversal of his convictions. We do, however, believe that the trial court erred in sentencing the Defendant. Accordingly, we affirm the Defendant's convictions but remand this case for resentencing consistent with the principles set forth in this opinion.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
JOSEPH M. TIPTON, JUDGE