STATE of Tennessee, Appellee,

v.

Ivy Lee PERSON, Appellant.

STATE of Tennessee, Appellee,

v.

Eugene KERRENT, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

June 21, 1989.

Permission to Appeal Denied by Supreme Court Oct. 2, 1989 in Kerrent.

George M. Googe, Jackson, for Ivy Lee Person.

Jesse H. Ford, III, Jackson, for Eugene Kerrent.

Charles W. Burson, State Atty. Gen. and Reporter, Norma Crippen Ballard, Asst. State Atty. Gen., Nashville, for the State.

OPINION

HERSCHEL P. FRANKS, Special Judge.

Defendant, Eugene Kerrent, appeals from his convictions on the issues of sufficiency of evidence and failure of the trial court to conduct separate trials. Defendant, Ivy Lee Person, appeals from his convictions, likewise raising the issue of sufficiency and raises issues of multiplicity, double jeopardy, hearsay and severance.

The state called numerous witnesses, including Dr. Janice L. Brunch, a staff psychiatrist employed with the Jackson Counseling Centre, who testified the victim, Billie Ruth Doss's mental condition was that of "chronic undifferentiated schizophrenia, residual type". The witness explained the described condition impairs reasoning and its victim has difficulty in relating to other people, tends to misrepresent information, is easily confused, responds illogically and has difficulty making judgments concerning personal safety.

Billie Ruth Doss testified that in December of 1986 she was standing on Highway 45 North in Jackson, Tennessee, late one night when she entered a car with two men. She identified at trial by name the defendants on trial as being the occupants of the vehicle. She testified they went to a Q–Mart convenience store where one of the defendants purchased for her a pack of cigarettes and a cup of coffee. Upon returning to the vehicle, they proceeded to Old Medina Road where the car stalled in ice and mud. She then explained defendant Person grabbed her and molested her. She was "forced to have sex" with Person and he "hurt" and "pounded" her. She said Kerrent did not rape or assault her but did not interfere with Person. Upon leaving the vehicle she ran down the road to a house where a "Mr. Young" answered the door. She related what had happened and Young transported her to the hospital. She did not recall seeing the vehicle occupied by the defendants while en route to the hospital. As counsel for defendants stress in their arguments, Doss was unable to respond to certain questions and made inconsistent and confusing statements in the course of her testimony.

Laurie Christine Jones, an employee of Bull Market, formerly Q–Mart, testified that on December 5, 1986, "two gentlemen" and "a little old lady" came into the market together. She identified the men as the defendants on trial and the woman as the victim. She identified Kerrent as the man who leaned over the counter and asked when he was going to get some sex from her. She further testified the men did not restrain Doss and there did not appear to be any tensions among the three.

Lisa Young, a resident on Old Medina Road, testified that on December 5, 1986, in the early morning hours, she and her husband answered a knock on their door and found the victim bleeding at the nose and mouth with both eyes swollen and discolored. She explained Doss "was hysterical, just about" and asked for help. Doss related that she had been riding with two men when they ran off the road into a ditch and she was then beaten and raped.

Phillip Young gave substantially the same testimony with respect to the victim's arrival and appearance and added that en route to the hospital Doss "pointed out the car that she had been in" and Young took down the license number and furnished it to the police. On cross-examination he testified the victim "got herself cleaned up" at his home and that she "had no reaction, really" to seeing the car while en route to the hospital.

Medical witnesses established the victim "had multiple lacerations, abrasions and bruises all over her face and her head and her chest was bruised" and a physical examination revealed the presence of sperma-

tozoa in her vagina, indicating that sexual activity was "fairly recent"—"less than three days at max."

David Woolfork, a sergeant in the Madison County Sheriff's Department, testified that on December 5, 1986, he interviewed the victim at the hospital, checked the license plate number that had been furnished by Young, and determined the vehicle was registered to Joanne Anderson and upon going to her address found defendant Person in the driver's seat, with the owner as a passenger. He took both occupants into custody and Person, after being advised of his rights, gave a statement which was redacted for admission into evidence.

The statement was to the effect that around 3:00 a.m., he left his sister's home and headed for the mall in Anderson's vehicle, a maroon Chevrolet, when he stopped at the Highway 45 intersection "and picked up a white lady [with] a toboggan on" who got into the back seat. He drove past the mall while talking to the "lady" and stopped at the Q–Mart where he bought five potatoes, a dollar's worth of gas and a pack of Virginia Slims for the woman. The woman went in the store with him and they returned to the car and while "talking and driving and just kicking around" he "turned onto Ashport Road" "out in the country" and parked. After talking and drinking some beer he had sex with her. He did not force her and she took her own clothes off. He "did come in her". Afterwards he got out of the car and "some black dude" in a smaller white car came by and tried to help but couldn't get him out. She then started to walk down the road and that was the last he had seen of her. He said he never hit her.

Woolfork later contacted and obtained a statement from Eugene Kerrent, who was also advised of his rights, and signed a waiver. Kerrent's redacted statement was admitted into evidence and read to the jury wherein Kerrent stated he "was in a little old red Chevrolet" "[on] December 5, 1986, at about 2:00 or 3:30 a.m." when he "picked up a white lady at Old Hickory and the bypass". They went to a store and got out and got a cup of coffee and a pack of cigarettes and they "went on some road out in the country" and he "had been drinking and ... was nodding". They pulled off the side of the road and got stuck and he got out and walked down the street looking for a board to put under the tires; that nothing previously was said about having sex but "I wanted to have sex with the woman, but I changed my mind because it was wrong to do that to that woman." He tried to push the car out and "some black man came along in a small car and tried to help us but couldn't." He said the woman went over to the man's car but he couldn't hear what was said. The woman then started walking back down the road and he concluded, "I never did hit the woman."

Each defendant in his statement ends the statement by explaining that he went to "Willie Neal's house" from the stalled vehicle.

Our standard of review of the evidence is whether, after considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes were established beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); T.R.A.P., Rule 13(e).

■ Kerrent challenges the sufficiency of his conviction for aggravated kidnapping on the basis "the proof did not show he had the requisite intent to kidnap the alleged victim." T.C.A. § 39–2–301 merely requires the unlawful act be committed "with the felonious intent to: (1) cause the other to be confined secretly against his will; (2) detain the other against his will; or (3) send the other out of the state against his will", where one or more of the aggravating circumstances exists as set forth in the statute.

While there is evidence the victim entered the car voluntarily and the convenience store employee observed no force or

coercion, nevertheless the victim was suffering mental illness and T.C.A. § 39–2–301(b)(2) provides:

A confinement, detention or moving of the victim is deemed to be against the will of the victim if:

.    .    .    .    .

(2) The victim by reason of ... mental disease or defect ... is manifestly unable or known by the person alleged to have violated this section to be unable, to make a reasonable judgment as the nature or harmfulness of the confinement, detention or moving....

The evidence establishes that Mrs. Doss was unable to make a reasonable judgment as to the nature or harmfulness of getting into a car with two strangers in the nighttime and her condition was readily manifest from her appearance, demeanor, behavior and rambling manner of conversation.

Defendant Person in challenging the evidence as being insufficient to convict stressed the victim's confused testimony of events, the defendants' and victim's behavior at Q–Mart and the conflicting testimony as to the color of the car in question. The evidence when accorded the proper construction was sufficient for a rational trier of fact to find the defendants guilty beyond a reasonable doubt. *See State v. Pender,* 687 S.W.2d 714 (Tenn.Cr.App.1984); *State v. Leach,* 684 S.W.2d 655 (Tenn.Cr.App. 1984).

Defendant Person argues "there was no proof of anything more than one criminal episode and multiple convictions of the same offense should not be allowed to stand on the principles of multiplicity, merger, and double jeopardy." On motion for a new trial, the trial judge ruled there could only be one conviction of aggravated kidnapping and one conviction of aggravated rape. The judgments entered conform to the statement of the trial court. Defendants' multiplicity argument is without merit. Judgments entered on only one of the multiple offenses charged rectifies the excesses. *See Ball v. United States,* 470

U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). *Also see State v. Davis,* 654 S.W.2d 688 (Tenn.Cr.App.1983).

■ Previously, defendant Person had been indicted and tried for aggravated rape. That trial ended in a mistrial after the jurors reported they were hopelessly deadlocked. Subsequently, Person was indicted in the instant case on charges of aggravated kidnapping, aggravated rape and habitual criminality. Subsequently, the trial court granted the state's motion for a *nolle prosse* in the prior case. On appeal, Person argues the prosecutor violated defendant's double jeopardy and due process rights by bringing new charges. This claim is without merit. Retrial due to a mistrial resulting from a deadlocked jury does not constitute double jeopardy. *State v. Witt,* 572 S.W.2d 913 (Tenn.1978). *See also Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). In this regard, defendant's reliance on *State v. Craig,* 655 S.W.2d 186 (Tenn.Cr. App.1983), is misplaced since in *Craig* the mistrial was not due to a hung jury but was granted *sua sponte* by the court due to the court's comments to the jury about other pending indictments. A deadlocked jury establishes a manifest necessity for a mistrial and no such necessity was apparent in *Craig.* *See State v. Freeman,* 669 S.W.2d 688 (Tenn.Cr.App.1983).

■ Person's due process claim on the theory of "prosecutorial vindictiveness" was waived as it was not presented in the motion for a new trial. T.R.A.P., Rule 3(e); T.R.A.P., Rule 36(a); *State v. McKinney,* 603 S.W.2d 755 (Tenn.Cr.App.1980). Moreover, the argument is without merit since there is no evidence that the prosecutor filed the additional charges merely to punish the defendant for pleading not guilty and proceeding to trial on the first indictment.

■ Person next asserts the trial court erred in allowing Phillip Young to testify over objection that while driving the victim to the hospital she pointed to the car

wherein she had been assaulted. In response, the state argues the testimony was admissible as an excited utterance pursuant to *State v. Meadows*, 635 S.W.2d 400 (Tenn.Cr.App.1982), and if admitted in error it was harmless due to the defendant's identification of the car in his redacted statement.

■ As a general rule in sex crimes, the victim's complaints made within a reasonable time after the occurrence are admissible. *Johnson v. State*, 201 Tenn. 11, 296 S.W.2d 832 (1956). In the instant case, all the prerequisites of an "excited utterance" are met. Rape is "an occurrence or an event sufficiently startling to render inoperative the normal reflective thought processes of an observer." E. Cleary, *McCormick on Evidence*, § 297 at p. 854 (3d ed. 1984). *See also* D. Paine, *Tennessee Law of Evidence*, § 67. The test is whether the declarant at the time of the offered statement was still under the influence of an exciting event. *McCormick* at § 297. The record establishes the victim was in a hysterical state only shortly before being transported to the hospital and was severely injured. The circumstances surrounding the utterance fairly establish it was not made as the result of a conscious fabrication or reflection but was triggered by passing the scene of the crime.

Finally, both defendants contend the admission of each co-defendant's statement violated their confrontation rights recognized in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which were extended to interlocking statements by *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

The use of a confession which does not implicate the defendant or from which all references to the moving defendant have been deleted does not fall within the ambit of *Bruton*. *Dorsey v. State*, 568 S.W.2d 639 (Tenn.Cr.App.1978). The issue thus becomes whether the redacted statements satisfy the requirements of *Bruton*. First, neither statement could be considered to be a "devastating confession" and, in our view, neither incriminates the other defendant. *See White v. State*, 497 S.W.2d 751 (Tenn.Cr.App.1973). *Cruz* presupposes the existence of a *Bruton* error and its application requires the confession by the non-testifying co-defendant to, in fact, incriminate the defendant.

■ If the confession does incriminate the defendant, a plurality of the United States Supreme Court in *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), had held that the state nonetheless could avoid reversal if the defendant had confessed and the jury had been given appropriate limiting instructions. *Cruz* foreclosed that argument but did not hold that a *Bruton* error could be avoided by a proper redaction of the confession. In the instant case, the non-testifying co-defendant's confession was redacted to eliminate altogether any suggestion that someone was present, other than the confessing co-defendant and the victim. The redaction rendered the confession "facially" non-incriminating; however, the trial judge failed to instruct the jury that the confession could only be considered against the co-defendant.

On this issue, the United States Supreme Court in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) said:

> The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process. On the precise facts of *Bruton*, involving a facially incriminating confession, we found that accommodation inadequate. As our discussion above shows, the calculus changes when confessions that do not name the defendant are at issue. While we continue to apply *Bruton* where we have found that its rationale validly applies, see *Cruz v. New York*, [481] U.S. [186], 107 S.Ct. 1714, 95 L.Ed.2d [162 (1987)], we

decline to extend it further. We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to her existence.

█ While the failure to give a proper limiting instruction was error, it was harmless since the evidence in other respects would enable a rational trier of fact to find guilt beyond a reasonable doubt. *See State v. Porterfield,* 746 S.W.2d 441 (Tenn. 1988).

The judgments of the trial court are affirmed.

DAUGHTREY and BYERS, JJ., concur.