# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY 1998 SESSION



**FILED**

**August 25, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **NO. 02C01-9708-CC-00334** |
| | ) | |
| Appellee, | ) | **BENTON COUNTY** |
| | ) | |
| **VS.** | ) | **HON. JULIAN P. GUINN,** |
| | ) | **JUDGE** |
| **REGINALD L. EDMONDS,** | ) | |
| | ) | (Rape of a Child, Aggravated Sexual |
| Appellant. | ) | Battery, Especially Aggravated |
| | ) | Sexual Exploitation) |
| | ) | |

**FOR THE APPELLANT:**

**GUY T. WILKINSON**
District Public Defender

**VICKI S. SNYDER**
Assistant Public Defender
117 N. Forrest Avenue
P.O. Box 663
Camden, TN  38320

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

**G. ROBERT RADFORD**
District Attorney General

**VICTORIA DIBONAVENTURA**
**STEVEN L. GARRETT**
Asst. District Attorneys General
111 Church Street
P.O. Box 686
Huntingdon, TN  38344-0686

**OPINION FILED:** _____


**AFFIRMED**


**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Reginald L. Edmonds, was convicted by a Benton County jury of two (2) counts of rape of a child, one (1) count of aggravated sexual battery and one (1) count of especially aggravated sexual exploitation of a minor. He was sentenced as a Range I offender to concurrent terms of twenty (20) years for each rape count, twelve (12) years for aggravated sexual battery and twelve (12) years for especially aggravated sexual exploitation. On appeal, he presents the following issues for our review:

> (1) whether the evidence was sufficient to sustain the verdicts of guilt;

> (2) whether the trial court erred in denying his motion to suppress his statement given to law enforcement authorities; and

> (3) whether the trial court erred in allowing the state to introduce a statement by the victim as an excited utterance.

After a thorough review of the record before this Court, we find no reversible error. Accordingly, the judgment of the trial court is affirmed.

**FACTS**

The defendant was the father of the ten (10) year old victim, C.E.[1], and her thirteen (13) year old brother, T.E. Both children had been living with the defendant since he separated from their mother in 1989.

At trial, the victim testified as to four incidents of sexual abuse by the defendant. As to Count One which charged rape of a child, C.E. testified that several days before Christmas 1996, she was trying on some clothes. While she was changing, she noticed her father watching her through a hole in the wall. Defendant then opened the door, watched her for a few moments and then led her into another room. The victim was wearing only her underwear. Defendant then laid down on the bed, put his penis into her mouth and made her "rub it up and

---

[1] It is the policy of this Court not to reveal the names of minor victims of sexual abuse.

2

down" until he ejaculated.

As to Count Two which charged especially aggravated sexual exploitation of a minor, the victim testified that the defendant made a video of her while she was living with him. The videotape was introduced at trial and depicts the nude victim simulating masturbation.

As to Count Three charging rape of a child, C.E. testified that before Christmas 1996, defendant made her and her brother take their clothes off and get into bed with him. She referred to this as the "pajama party." She further testified that once she was in bed with him, her father "pulled [her] panties down and he put his dick in [her] butt."

As to Count Four charging rape of a child, the victim testified that when she was eight (8) years old, defendant put his "finger up in [her] butt." When she asked the defendant to leave her alone, defendant took her into another room and told her to "kiss" his penis. When she refused, defendant struck her. The defendant kept the victim at home for the next two days because of the bruising on the side of the victim's face.

Peggy Jamison, the victim's mother, testified at trial that on Saturday, December 21, 1996, she spoke with her daughter on the telephone. C.E. was crying and would not tell her mother what was bothering her. The next day, Jamison picked her children up from their father's home. C.E. was withdrawn and crying, then suddenly asked her mother what a "blow job" was. Upon further inquiry by her mother, the victim stated her father had molested her.

T.E., the victim's brother, testified at trial concerning the "pajama party" that occurred in the fall of 1996. He stated that his father asked him and his sister to take most of their clothes off and get into bed with him. He could recall that at one point his sister told his father to "stop." He also testified that in the spring of 1994, his father hit his sister, causing a bruise on her face.

Benton County Sheriff Bobby Shannon also testified at trial. Upon arresting defendant in December 1996, he confiscated the videotape which subsequently became the basis of the sexual exploitation charge. When he confronted the

3

defendant with the tape and pointed out that the victim was visibly distraught, the defendant responded, "if I'd . . . screwed her she'd had a smile on her face." Defendant denied having sexual intercourse with his daughter and told Sheriff Shannon that he was merely examining the victim for "parasites." At one point during their conversation, defendant told Shannon that he made the tape "[t]o have a little fun."

Defendant testified on his own behalf at trial. He denied sexually abusing his daughter and initially denied making the videotape, but eventually admitted making the tape to "examine [the victim] for like parasites." Defendant also denied that he asked his children to take off their clothes and get into bed with him. However, the following exchange occurred on cross-examination:

> Q.      Mr. Edmonds, your thirteen year old son [T.E.] has come in here under oath and has testified that you had him take off his clothes and get in bed and you got in bed with your underwear ---
>
> A.      Well, he had his underwear on too. I mean if he did -- if we did it, okay.
>
> Q.      He had his underwear on too?
>
> A.      Yeah. I didn't tell him to take his clothes off completely, if I -- if we ever did anything like that. That's just not me. I don't do that kind of thing. . .

The jury found defendant guilty of rape of a child in Counts One and Four, especially aggravated sexual exploitation in Count Two and the lesser offense of aggravated sexual battery in Count Three. Defendant now brings this appeal as of right.


## SUFFICIENCY OF THE EVIDENCE


Defendant challenges the sufficiency of the convicting evidence. Specifically, he claims that the victim "could not state with any certainty regarding dates of any of the alleged events." He also argues that the state failed to present any medical proof which would corroborate the victim's allegations. Therefore, he asserts that the evidence was insufficient for a rational trier of fact to find him guilty beyond a

4

reasonable doubt.

**A.**

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996).

Great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. Bigbee, 885 S.W.2d at 803; Harris, 839 S.W.2d at 75; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

**B.**

Defendant was convicted of rape of a child in Counts One and Four. Rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's . . . body." Tenn. Code Ann. § 39-13-501(7).

As to Count One, the ten (10) year old victim testified that several days prior to Christmas 1996, her father put his penis into her mouth. As to Count Four, the victim testified that when she was eight (8) years old, defendant put his "finger up in [her] butt." The evidence was sufficient to support defendant's convictions for

rape of a child in Counts One and Four.

## C.

In Count Two, defendant was convicted of especially aggravated sexual exploitation of a minor. That offense is defined as knowingly promoting, employing, using, assisting, transporting or permitting "a minor to participate in the performance or in the production of material which includes the minor engaging in: (1) [s]exual activity; or (2) [s]imulated sexual activity that is patently offensive." Tenn. Code Ann. § 39-17-1005(a). "Material" means "[a]ny picture, drawing, photograph, motion picture film, videocassette tape or other pictorial representation." Tenn. Code Ann. § 39-17-1002(2)(A). "Sexual activity" includes the act of masturbation. Tenn. Code Ann. § 39-17-1002(7)(B).

The victim testified that the defendant made a videotape of her in the spring of 1996. The videotape was introduced at trial and depicts the victim fondling herself in various positions and masturbating. Although defendant testified that he was merely examining his daughter for "parasites," a viewing of this graphic and lewd videotape clearly reveals the preposterous nature of defendant's claim. This sickening evidence is sufficient to support the jury's finding of guilt of especially aggravated sexual exploitation of a minor.

## D.

Although defendant was indicted for rape of a child in Count Three, defendant was convicted of the lesser offense of aggravated sexual battery. Aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" where "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). "Intimate parts" is defined as "the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

6

Both C.E. and T.E. testified that prior to Christmas 1996, defendant made them take their clothes off and get into bed with him. The victim testified that her father then "pulled [her] panties down and he put his dick in [her] butt." T.E. could recall that while they were in bed with their father, C.E. told him to "stop." Furthermore, defendant essentially admitted the occurrence of the "pajama party" in his own testimony. The evidence is sufficient to support defendant's conviction for aggravated sexual battery.

**E.**

Defendant contends that the evidence is insufficient to support his convictions because the victim did not testify as to the specific dates of the offenses. However, the state has no burden to prove that an offense happened on the exact date alleged in the indictment. "The rule is that the offense must be proved to have been committed prior to the finding of the indictment . . . and, except where a special date is essential or time is of the essence of the offense, the time of the commission of the offense averred in the indictment is not material and proof is not confined to the time charged." State v. West, 737 S.W.2d 790, 792 (Tenn. Crim. App. 1987). Indeed,

> [t]he time at which the offense was committed need not be stated in the indictment, but the offense may be alleged to have been committed on any day before the finding thereof, or generally before the finding of the indictment, unless the time is a material ingredient in the offense.

Tenn. Code Ann. § 40-13-207; *see also* State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991). A review of the entire record indicates that the state presented sufficient proof that the offenses occurred "on or about" the dates alleged in the indictment.

Additionally, there does not appear to be a jury unanimity problem under State v. Shelton, 851 S.W.2d 134 (Tenn. 1993). An election of offenses was not required since there was testimony about only four (4) sexual offenses and each was alleged in a separate count of the indictment. *See generally* State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997).

**F.**

Defendant further asserts that the evidence is insufficient because the state

did not present any medical proof that would corroborate the victim's testimony. A nurse practitioner who examined the victim on December 23 testified that her examination neither confirmed nor ruled out the allegations of sexual abuse. Although the medical proof was inconclusive, the jury was able to weigh and assess the testimony of the nurse practitioner along with that of the other witnesses. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Further, there is no requirement that the victim's testimony be corroborated by medical testimony. The fact that medical testimony could not confirm nor rule out sexual abuse is a matter of weight for the jury. State v. Howard, 617 S.W.2d 656, 658 (Tenn Crim. App. 1981).

## G.

The evidence is sufficient to support each of the defendant's convictions. This issue is without merit.

## MOTION TO SUPPRESS

Defendant further alleges that the trial court erred in denying his motion to suppress his statements to law enforcement authorities. He claims that Sheriff Shannon questioned him in violation of his constitutional rights because Shannon did not obtain a signed waiver of defendant's Miranda rights prior to questioning him. He further complains that Shannon did not record the defendant's statement, nor did he inquire whether defendant was intoxicated during the interview. He, therefore, asserts that he did not knowingly and voluntarily waive his rights prior to giving a statement to authorities, and the statement should have been suppressed at trial.

## A.

Sheriff Shannon testified at the motion to suppress that on December 24, 1996, he, along with other law enforcement officers, went to defendant's home to serve an arrest warrant on defendant in connection with the present offenses.

8

Defendant invited them inside, and Sheriff Shannon advised him of his <u>Miranda</u> rights. Shannon told defendant that they were looking for some videotapes, and defendant told him to "get a warrant."

Shannon arrested defendant and took him to the Benton County Jail. As Shannon was attempting to procure a search warrant, he and defendant began discussing the present charges. Shannon testified that although defendant never formally waived his right to an attorney, he never asked for an attorney. He stated that he read the defendant his <u>Miranda</u> rights twice prior to defendant giving a statement. He further testified that defendant did not appear to be under the influence of any intoxicant.

The state also introduced defendant's testimony from the preliminary hearing where he acknowledged that he was informed of his right to an attorney and his right to remain silent.

The trial court overruled the motion to suppress, finding that "the record [was] abundantly clear" that defendant waived his constitutional rights prior to speaking with Sheriff Shannon.

## B.

When an accused moves to suppress his statement given to a law enforcement officer, the findings of fact made by the trial court at the hearing on the motion are binding upon this Court unless the evidence contained in the record preponderates against these findings. <u>State v. Smith</u>, 933 S.W.2d 450, 455 (Tenn. 1996); <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996); <u>State v. Stephenson</u>, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. *See* <u>State v. Odom</u>, 928 S.W.2d at 23. However, this Court is not bound by the trial court's conclusions of law. The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. <u>Braziel v. State</u>, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

## C.

9

In Miranda v. Arizona, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

A valid waiver of an accused's Miranda rights is not presumed "simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." 384 U.S. at 475, 86 S.Ct. at 1628. However, an express written or oral waiver of a defendant's Miranda rights is not necessary to establish a valid waiver. North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); State v. Elrod, 721 S.W.2d 820, 823 (Tenn. Crim. App. 1986). Although mere silence is not enough to establish waiver, silence "coupled with a[ defendant's] understanding of his rights and a course of conduct indicating waiver" may support a conclusion that a defendant waived his rights. Butler, 441 U.S. at 373, 99 S.Ct. 1757; *see also* State v. Elrod, 721 S.W.2d at 823. Determination of whether a defendant effectively waived his Miranda rights depends upon the totality of the circumstances, including "the background, experience, and conduct of the accused." Butler, 441 U.S. at 374-75, 99 S.Ct. at 1758 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Considering the totality of the circumstances, there must be an indication that (1) defendant's choice to waive his rights was not coerced, and (2) defendant was able to comprehend the rights he was waiving. State v. Stephenson, 878 S.W.2d at 545.

## D.

At the time of his arrest, defendant was thirty-seven (37) years of age and had no prior criminal record. Sheriff Shannon testified that he read defendant his Miranda rights twice prior to defendant giving a statement. Although defendant never formally waived his right to remain silent and his right to counsel in writing, defendant never requested an attorney.

The trial court found that the record was "abundantly clear" that defendant

voluntarily waived his right to counsel and to remain silent. In light of the totality of the circumstances, we see no reason to disturb this ruling.

This issue is without merit.

## EXCITED UTTERANCE

Defendant further argues that the trial court erred in allowing Jamison, the victim's mother, to testify as to statements made by the victim. He alleges that the statements were inadmissible under the fresh complaint doctrine for child victims pursuant to State v. Livingston, 907 S.W.2d 392 (Tenn. 1995). The state counters with the argument that the statements were not admitted under the fresh complaint doctrine, but under the excited utterance exception to the hearsay rule. *See* Tenn. R. Evid. 803(2). Although victims' statements are no longer admissible under the fresh complaint doctrine, they may be admissible as an excited utterance. State v. Gordon, 952 S.W.2d 817, 819 (Tenn. 1997); State v. Livingston, 907 S.W.2d at 395.

**A.**

Jamison testified that on the night of December 21, she spoke with her daughter on the telephone, and C.E. was crying. C.E. would not tell her mother what was troubling her. When Jamison picked her children up from their father's home the next day, she noticed that C.E. was crying and "withdrawn." C.E. asked her mother what a "blow job" was. The victim then told her mother that "her father had molested her. He had touched her, he had done things with her."

**B.**

Tenn. R. Evid. 803(2) excepts from the hearsay rule any statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In order for a statement to be admissible under the excited utterance exception to the hearsay rule, the proponent of the statement must establish: (1) the occurrence of a startling event or condition; (2) the statement related to that startling event or condition; and (3) the declarant

11

was under the stress of excitement when the statement was made. *See* N. Cohen, D. Paine & Sheppeard, Tennessee Law of Evidence § 803(2).2 (3d ed. 1995).

> The ultimate test is spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication.

State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993). Furthermore, the fact that a statement is in response to a question does not necessarily exclude it from the excited utterance exception. Id.

## C.

We conclude that the trial court did not err in admitting the victim's statements to her mother as an excited utterance under Tenn. R. Evid. 803(2).[2] The victim was raped by her father. Rape is considered a startling event or condition. State v. Rucker, 847 S.W.2d 512, 517 (Tenn. Crim. App. 1992); State v. Person, 781 S.W.2d 868, 872 (Tenn. Crim. App. 1989). There is no dispute that the statement related to the startling event or condition.

Furthermore, the victim was obviously under the stress of the event. Although the victim made the statement at least one day after the startling event, the time interval "is material only as a circumstance bearing on the issue of continuing stress." Cohen, Paine & Sheppeard, Tennessee Law of Evidence, *supra* at 534. Other factors to consider are the "nature and seriousness of the events, and the appearance, behavior, outlook and circumstances of the declarant." State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993). The ten (10) year old victim had been raped by her father the previous day. Jamison testified that the victim was crying and "withdrawn" at the time she made her statement. The circumstances surrounding the victim's statement establish that it "was not made as the result of a conscious fabrication or reflection" but was prompted by the distressed and crying victim seeing and talking to her mother. State v. Person, 781 S.W.2d at 872.

In State v. Gordon, a three (3) year old victim was sexually assaulted by her

---

[2] We note that the victim's question, "what is a blow job?" is non-hearsay, as it was not offered to prove the truth of the matter asserted. *See* Tenn. R. Evid. 801.

uncle. Later during the same day, the victim was attempting to urinate when she experienced pain. 952 S.W.2d at 821. Upon her mother's examination of the child and finding dried blood in the child's vagina, she asked her daughter, "[w]ho made you hurt like that?" Id. The victim then implicated the defendant. Id.

The Tennessee Supreme Court held that the victim's statement implicating the defendant was admissible as an excited utterance. Id. The Court determined that the child's attempting to urinate was a startling event and related to the sexual abuse. Id. Furthermore, the Court concluded that "[a]lthough the victim's parents offered reassurance and asked what had happened, the stress of the event had not diminished and the time was short." Id. We find the present facts to be analogous to those in Gordon.

Regardless, if there was error, it was harmless at best. Tenn. R. Crim. P. 52(a). The evidence presented against the defendant was overwhelming, considering the victim's detailed testimony describing the specific acts of sexual abuse. In light of this evidence, Jamison's testimony that the victim told her that her father "molested her," "touched her," and "had done things with her" did not overly prejudice the defendant.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**CURWOOD WITT, JUDGE**

13

_____
**ROBERT W. WEDEMEYER, SPECIAL JUDGE**