# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON
### Assigned on Briefs October 3, 2000

## STATE OF TENNESSEE v. BOBBY B. BARRETT

### Direct Appeal from the Criminal Court for Shelby County
### No. 98-05762      John P. Colton, Jr., Judge

———————————

### No. W1999-02002-CCA-R3-CD - Filed December 12, 2000

———————————

The defendant was convicted in the Shelby County Criminal Court of rape of a child. In this appeal as of right, the defendant presents two issues, one with subparts: (1) whether the trial court erred in admitting the following: (a) testimony of the sister of the victim concerning a prior bad act of the defendant; (b) testimony of the mother of the victim concerning statements made by the victim to her following the rape; and (c) testimony of the nurse practitioner concerning statements made to her by the victim and his mother; and (2) whether the evidence was sufficient to support his conviction. We conclude that the trial court erred in admitting the testimony of the victim's sister concerning the defendant's sitting her on his lap and asking for a kiss. Nevertheless, we conclude that such error was harmless. The testimony of the mother of the victim was properly admitted pursuant to the excited utterance exception to the hearsay rule. The defendant's failure to timely object to the testimony of the nurse practitioner constitutes a waiver of that issue. We further conclude that the evidence was sufficient to support the defendant's conviction for child rape. The judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

A C Wharton, Jr., Shelby County Public Defender; Tony N. Brayton, Assistant Public Defender (on appeal); and Barry Kuhn, Assistant Public Defender (at trial), for the appellant, Bobby B. Barrett.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Phyllis Gardner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Bobby B. Barrett, was convicted by a Shelby County jury of rape of a child, a Class A felony, and was sentenced as a Range I, standard offender to twenty years in confinement as a child rapist. In this appeal as of right, the defendant presents the following issues for our review:[1]

> I.   Whether the trial court erred in admitting testimony from each of the following witnesses:
>
> (1) The victim's sister regarding a bad act of the defendant;
>
> (2) The victim's mother regarding statements made to her by the victim; and
>
> (3) The nurse practitioner regarding statements made to her by the victim and his mother.
>
> II.  Whether the evidence was sufficient to support a conviction for rape of a child.

After a thorough review of the record, we conclude that the trial court erred in admitting testimony of the victim's sister concerning bad acts of the defendant. However, the error does not require reversal, and, accordingly, the judgment of the trial court is affirmed.

## FACTS

The defendant, thirty-six years old at the time of the crime, was the neighbor of the ten-year-old victim, S. J.,[2] who lived with his mother, sister, and brother in an apartment in the same complex where the defendant lived with his wife. Although the defendant and his wife apparently had nine children, none lived with them. Neighborhood children, including the victim and his sister, spent time playing video games at the defendant's apartment.

At trial, the victim testified that on August 16, 1997, he went to the defendant's apartment to play video games. Later, when his sister and a friend also came over to play the video games, the victim went into a bedroom to work on a model airplane. The persons in the apartment included the victim, his sister, her friend, the defendant, and the defendant's wife. Both the victim and his sister

---

[1] Although not the order in which the defendant presented the issues, we address first the admissibility of the evidence because of its relevance to the question of the overall sufficiency of the evidence to convict.

[2] It is the policy of this court to use initials to identify minor victims of sexual offenses.

testified that the defendant showed them a gun that was under a mattress that was on the floor in the living room.[3]

The defendant followed the victim into the bedroom and showed him a model car. The defendant then closed the door and offered the victim marijuana. The victim and the defendant shared two marijuana cigarettes that the defendant had made with marijuana in a bag on the dresser. Approximately twenty minutes after smoking the marijuana, the defendant, standing in front of the closed door, called the victim, who had returned to working on the defendant's model car, to come over to him. The victim testified that the defendant pulled down his pants and performed oral sex on him. The victim testified as to what happened next:

> Then after that -- then he made me suck his. And after he got finished, he sat me on the bed and told me he was going to give me money and stuff and that car he was building on so I wouldn't tell my mom. And then when I walked out the room, and then I went and told my momma. And then my momma came outside, then he had ran.

The victim's sister saw the victim leave the defendant's apartment, holding the model car, and testified that he was not crying at that point. The defendant followed the victim out of the apartment but not into the apartment where his mother was. The victim was crying by the time he reached his mother and told her what had happened. It was approximately 7:00 p.m.

The victim's mother came outside and confronted the defendant, who then returned to his apartment, telling his wife, according to her testimony, that "I don't know what the little boy told his mamma, but she said he said I done sucked his thang or something." The victim's sister, still inside the apartment, testified that the defendant was cursing and waving the gun. The defendant then locked his front door, apparently after the victim's sister had left, and went out the back door of his apartment.[4]

According to testimony of the victim's mother, officers with the Memphis Police Department arrived and entered the defendant's apartment with the victim. The victim testified that he showed the officers where the marijuana was on the dresser. The officers then took the victim and his mother to the Child Advocacy Center where the victim was interviewed and examined by a nurse practitioner.

The nurse practitioner, Nancy Miles, testified that she was employed full-time by the University of Tennessee Medical Group and also was a forensic nurse examiner at Memphis Sexual

_____

[3] In her testimony, Sharron Barrett, the defendant's wife, denied that any gun was in the house. No weapon was found by police investigators.

[4] Although the State asserts in its brief that the defendant returned to his house and "retrieved his gun," the presence of a weapon was a controverted fact.

Assault Resource Center, a position she had held for ten years. She interviewed and examined alleged victims of sexual assault brought to her by the police department. In this case, she examined the victim at approximately 10:15 p.m. to retrieve any physical evidence such as semen from the child's mouth or the perpetrator's saliva from the child's genital area. She testified that a urine test for detecting the presence of marijuana in the system was not available at the time of this offense. She was not aware of any positive results from tests of samples she took but testified that she would not be surprised by the lack of positive results given the difficulty of detecting sperm in the child's mouth when time has passed and that the child may have eaten or consumed fluids.

## ANALYSIS

### I. Admissibility of Testimony

### A. Bad Act Testimony of the Victim's Sister

The defendant contends that the trial court erred by permitting the State to present a prior act of misconduct between the defendant and the victim's minor sister, E.J. In response, the State contends that the evidence of sexual misconduct between the defendant and E.J. was probative of the defendant's intent to commit the crime of rape of a child.

On the day before the trial, E.J., who is a year older than the victim, came forward with a revelation concerning the defendant. She testified that she had told no one about the incident until she told the prosecutor on June 13, 1999. The State was preparing to elicit testimony concerning this incident from E.J., as a response to the following question: "E., while you were in the house, did you have any contact with Bobby Barrett?" The defendant objected immediately on the grounds of lack of relevancy and impermissible character reference. A jury-out hearing was conducted at which time E.J. testified that on the day of the indicted offense, August 16, 1997, while they were alone in the apartment, the defendant put her on his lap and asked her to kiss him. E.J. told the defendant that she did not even kiss her own father. The defendant then asked E.J. to "just give me a kiss on my jaw." E.J. testified that she did not kiss him but got up and went outside. The defendant did nothing to stop her.

The State argued at trial that the evidence was probative of intent. The trial court, in allowing the testimony, stated the following:

> All right. Lawyers, the Court appreciates your arguments in these matters. Your statements help the Court clear this matter up. As far as a testimony is concerned, the Court is going [to] find that the testimony involving the kiss will go to the intent of the defendant as part of the facts in this case. And also the cursing, holding the gun and waving it around will be allowed as part of the facts in the case. It's part of what happened at a very close time as to the result that followed the victim male child possibly being assault[ed].

And the Court further finds that there cannot be testimony of what any other person says. The Court wants to tell the witness that he [sic] can't testify about what your mother said. The Court finds that the other matters that will be allowed, that on a scale involving the probative value, that determines that it does outweigh the prejudice to the defendant might have in this case. Are we clear, lawyers, on the ruling?

After E.J. testified, a juror sent the following question to the trial court: "Was this the first time Bobby made a pass at E.[J.]?"[5] The trial court held a bench conference and read the question to both lawyers. The trial court did not allow the question to be answered.

This issue is controlled by Tennessee Rule of Evidence 404(b), which provides as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Generally, this rule is one of exclusion, and evidence that an accused has committed some other crime or bad act independent of that for which he is charged is inadmissible, even though it may be a crime or act of the same character as that for which the accused is on trial. See State v. Howell, 868 S.W.2d 238, 254 (Tenn. 1993). If, however, evidence that a defendant has committed

---

[5]During the trial, the jurors asked nine additional questions: Question 2: "Can we have or see a map of the area being discussed?"; Questions 3 and 4: "How did the witness [the victim's mother] know when to run if she didn't see Bobby [the defendant] running and who told her to run?"; Question 5: "Was there any drug test on the victim?"; Questions 6 and 7: "Did Sharron [the defendant's wife] voluntarily have sexual relations with Bobby Barrett in order to have twin boys by him? Does she remember this relationship?"; Question 8: "Did police find the gun?"; Question 9: "Did Sharron smell weed when he smoked during the time [S.J.] and Bobby were in the room?"; and Question 10: "Does Sharron approve of drugs in her home?"

a crime separate from the one for which he is being tried is relevant to some matter actually in issue in the case on trial and if its probative value is not outweighed by the danger of its prejudicial effect, the evidence may be admitted. See id. at 254. The balancing test here is one that tips readily in favor of exclusion since the danger of prejudicial effect must simply "outweigh" the probative value. Legal authorities support this restrictive approach "because 'other act' evidence carries a significant potential for unfairly influencing a jury." Neil P. Cohen et al., Tennessee Law of Evidence § 404.7 at 172 (3d ed. 1995). "Having heard about the 'other act,' a jury may be more inclined to find the defendant guilty of the act charged." Id. at 170.

The exceptions to the exclusionary rule of 404(b) are when evidence is offered to prove the motive of the defendant, his identity, his intent, the absence of mistake, opportunity, or as a part of a common scheme or plan. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Here, the prosecution argues that the bad act of the defendant was relevant to the issue of intent. The State argued at trial that the testimony of E.J. "shows that the defendant was intent upon performing some sexual acts."

The definition of rape of a child does not specify mental state. Nevertheless, where a definition "does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." Tenn. Code Ann. § 39-11-301(c). Evidence of intent must, nevertheless, be relevant, that is, it must be evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Otherwise, the evidence is inadmissible. See id. 402. We are not persuaded evidence that the defendant, hours before the crime with which he was charged, sat E.J. on his lap and asked for a kiss makes the fact that the defendant followed the victim into the defendant's bedroom and forced the victim to engage in oral sex more probable or less probable.

In addition, the trial court, before admitting such evidence, should find clear and convincing evidence that the prior crime or bad act was committed by the defendant. See State v. Parton, 694 S.W.2d 299, 301 (Tenn. 1985). The trial court made no such finding. We conclude that this evidence was not relevant to any matter actually at issue in this case. Even if we were to conclude that the testimony of E.J. concerning the kiss were relevant, the danger of unfair prejudice to the defendant outweighs any probative value. One need only consider the question submitted to the trial court by a juror to ascertain that the evidence was being considered for exactly the purpose that Rule 404(b) seeks to prohibit, that is, for propensity purposes. We conclude that the trial court abused its discretion in admitting the testimony of E.J. concerning a prior bad act of the defendant.

We must next determine whether the error more probably than not affected the judgment. See Tenn. R. Crim. P. 52(a). Because the issue here is primarily an evidentiary one, the effect of a ruling in violation of 404(b) is weighed by the same standard as other non-constitutional evidentiary errors: The defendant must show that the error probably affected the judgment before reversal is appropriate. See State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999) (stating that severance

of offenses is primarily an evidentiary question and as such error must be shown to have probably affected the judgment) (citing State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984)).

The defendant contends that the admission of the kiss testimony was not harmless error because such testimony of other uncharged sexual conduct[6] created an opportunity for the jury to impermissibly infer that the defendant had a propensity to commit the oral rape. We agree that there was indication that at least one member of the jury appeared to be considering propensity. Nevertheless, the determination whether erroneously admitted testimony caused unfair prejudice to the defendant or was harmless error looks to an additional factor. We look to the "degree . . . by which the proof exceeds the standard required to convict . . . ." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979); see also Moore, 6 S.W.3d at 243 (holding evidentiary error harmless where evidence supporting count of child rape was more than sufficient to support verdict of guilty beyond a reasonable doubt). Where proof is more than sufficient to convict, harmless error is appropriate, and the expenditure of judicial resources on a new trial is not required. In this case, the direct testimony of the victim and the corroborative testimony of the victim's mother, even in the face of the lack of physical evidence of rape, were more than sufficient to allow a rational jury to conclude beyond a reasonable doubt that the defendant forced the victim to perform fellatio. Therefore, we conclude that the error of the trial court in admitting the testimony of E.J. concerning a prior bad act of the defendant was harmless in that it did not affect the judgment of the jury.

## B. Hearsay Testimony of Victim's Mother

The defendant contends that the trial court erred in allowing the victim's mother to testify regarding statements made by the victim to her shortly after the crime. The defendant argues specifically that the testimony was hearsay not subject to any exception allowing its admissibility. The State contends that the evidence satisfies the hearsay exception for excited utterances because the statements of the victim were made while he was under the stress of excitement caused by the rape. The trial court ruled that the evidence was admissible.

Lori Jones, the victim's mother, testified that she was drifting off to sleep while watching television when the victim came in crying. Ms. Jones thought at first that the victim and his sister might have been in a fight, so she asked him who had done something to him now. She testified that he had a car in his hand. The victim responded, but his mother did not hear his answer. Ms. Jones testified to the following:

> He said something first. I didn't hear that. And I said what. He said
> he gave me this car, and he did oral sex on me. I said what, and I got
> up, and I went out there, and I called him - - I won't say man, called
> Bobby. And he came to see what I wanted, and I went back in the
> house. And I was fixing to try and get him myself, but they wouldn't

---

[6]The defendant argued in the trial court that his conduct was not romantic in nature but more like the request of a parent, and, additionally, that it lacked identity with the matter being tried.

let me cause they didn't know what was going on over there. As soon as I said call the police, he went in his house, and my daughter she was still in there. He locked the door.

Pursuant to Tennessee Rule of Evidence 803(2), out-of-court statements of a declarant, offered for their truth, "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are admissible as an exception to the hearsay rule. The reasoning behind the exception for "excited utterances" is that such statements have indicia of reliability in that the declarant has most likely had little time for reflection; the statements are spontaneous, lacking potential fabrication; and the memory of the event is still fresh. See Cohen, supra, § 803(2) at 532. The requirements of Rule 803(2) are: (1) there must be a startling event or condition; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant is under the stress of excitement from the event or condition. See Tenn. R. Evid. 803(2); see also State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997).

As to the first requirement, "[r]ape is 'an occurrence or an event sufficiently startling to render inoperative the normal reflective thought processes of an observer.'" State v. Person, 781 S.W.2d 868, 872 (Tenn. Crim. App. 1989) (quoting E. Cleary, McCormick on Evidence, § 297 at 854 (3d ed. 1984)). As to the second requirement, the statement made by the victim to his mother was related to the rape.

The third requirement, that the statement be made while the declarant is under the stress of excitement from the event, is often the most contentious requirement. As to this requirement, "[t]he ultimate test is spontaneity and logical relation to the main event . . . ." State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993). Relevant factors include the time interval, although time is not alone determinative. Others include: "[T]he nature and seriousness of the event; the appearance, behavior, outlook, and circumstances of the declarant, including such characteristics as age and physical or mental condition; and the contents of the statement itself, which may indicate the presence or absence of stress." Cohen, supra, § 803(2) at 534.

Here, there was testimony by the victim's sister and the defendant's wife that the victim left the defendant's apartment without any outward signs of distress. The victim's sister testified that she did not know anything was wrong until the defendant returned to his apartment in a highly agitated state. When the sister did see the victim immediately thereafter, he was crying. His mother also described him as crying. The victim, a ten-year-old, had been given marijuana to smoke and within some twenty minutes compelled to perform fellatio. He was then offered inducements not to tell and was followed by the defendant when the victim went to his mother, crying by the time he reached her to tell her what had happened. We conclude that the trial court did not abuse its discretion in finding that the statements of the victim to his mother were made after a startling event

and while the victim was under the stress of excitement caused by that event and were, therefore admissible as excited utterances.[7]

## C. Hearsay Testimony of Nurse Practitioner

The defendant's motion for a new trial states the following: "That the Court erred in overruling the objection of the defendant to testimony of nurse practitioner, Nancy Miller [sic], to hearsay statements made to her by the victim, [S. J.], and his mother, Laurie Jones." The transcript of the trial shows that no objection was ever made by the defendant to the testimony of Nancy Miles, on any grounds.[8] Defense counsel cross-examined Ms. Miles concerning the exact words the victim had used in describing to her what had happened.

The failure to object contemporaneously to testimony in this case constitutes a waiver. See Tenn. R. App. P. 36(a), Advisory Commission Cmts. ("The last sentence of this rule is a statement of the accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error."); State v. Smith, 24 S.W.3d 274, 279-80 (Tenn. 2000); see also Hill v. State, 513 S.W.2d 142, 143 (Tenn. Crim. App. 1974) (stating that to allow evidentiary questions to be raised at anytime would "undercut the very function of the trial process, for it would become a tactical matter of defense to allow a bit of constitutionally inadmissable evidence into the record, in the hope for an acquittal but secure in the knowledge that a new trial would result"). We conclude that the defendant has waived his complaint about Ms. Miles's testimony.

## II. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence. Specifically, he claims that there was no physical evidence to corroborate the victim's story and that he was convicted solely on the basis of the testimony of the victim. Therefore, he asserts that the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a

---

[7]Both "res gestae" and "spontaneous utterance," terms used by the prosecution, are less precise and generally less acceptable than the term "excited utterance."

[8]The defendant's motion for a new trial also includes as error the following: "That the Court erred in overruling the Defendant's objection to the statements by Memphis Police Department Sargent [sic] Eugene Ross with regard to hearsay statements made to him by the victim, [S.J.]." The transcript of the trial reveals that, although the defendant started to object to Sergeant Ross's testimony, such objection was withdrawn after a bench conference, portions of which were inaudible. The defendant chose not to argue in this appeal error concerning Sergeant Ross's testimony.

reasonable doubt."); <u>see</u> <u>also</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); <u>State v. Abrams</u>, 935 S.W.2d 399, 401 (Tenn. 1996). This rule applies to guilty verdicts predicated on direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. <u>See</u> <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Great weight is given to the result reached by the jury in criminal trials. A jury verdict accredits the State's witnesses and resolves all conflicts in favor of the State. <u>See</u> <u>State v. Bigbee</u>, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. <u>See</u> <u>id</u>. at 803; <u>see</u> <u>also</u> <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence that the defendant enjoys at trial and raises a presumption of guilt on appeal. <u>See</u> <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973). The defendant has the burden of overcoming this presumption of guilt. <u>See</u> <u>id</u>.

Here, the defendant was convicted of rape of a child. Rape of a child is the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's . . . body[.]" <u>Id</u>. § 39-13-501(7).

First, the defendant appears to argue that the State was somehow required, in its case-in-chief, to present corroborating physical evidence. There is no such requirement, and the defendant cites no authority for such a contention. As far as physical evidence is concerned, the jury in this case heard Ms. Miles's testimony concerning her collection of samples with a swab from the victim's body and the difficulties inherent in obtaining positive results of oral rape from such samples. The jury was free to weigh the lack of positive physical corroborating evidence as it saw fit.

The defendant also contends that he was convicted solely on the testimony of the victim and that the victim's testimony was insufficient to convict him. The weight and value given the testimony of the victim was resolved by the jury. The victim testified that, after having been given marijuana by the defendant, he was forced to perform oral sex on the defendant. He demonstrated how the defendant was seated on the floor with his back and hands against the door and his legs apart when the rape occurred and testified that the defendant ejaculated into the victim's mouth. He testified that the defendant also performed oral sex on him. He identified the defendant in open court as the perpetrator.

Corroborating testimony was heard by the jury, first from the victim's sister, who was in the apartment at the time of the rape and saw her brother walk out of the apartment holding a model car and saw the defendant follow him. The victim's mother also testified that the victim was crying and upset when he came to her after the rape and told her what had happened. The defendant's wife corroborated the fact that the victim and the defendant were in a bedroom with the door closed; that the victim left holding a model car that her husband had bought; and that her husband had marijuana

in the bedroom. Testimony of Ms. Miles, heard without objection from the defendant, indicated that the victim had also told her an identical version of the rape, including statements by the victim about the marijuana and the gun. Marijuana was found on the defendant's dresser, and the defendant's wife identified the model car the victim turned over to the police as belonging to her husband.

We conclude that a rational jury could have accredited all of this evidence over the theory of the defendant that the rape never happened and could have concluded that the defendant did rape the victim, a child of ten. As such, the evidence sufficiently supports the defendant's conviction for rape of a child.

## CONCLUSION

We conclude that the trial court erred in admitting the testimony of E.J. concerning the defendant's prior act of holding her on his lap and asking her to kiss him. Because the evidence presented against the defendant was more than sufficient to convict him of rape of a child, we conclude that this error was harmless. Testimony of the victim's mother was properly admitted under the excited utterance exception to the rule prohibiting hearsay testimony. The defendant, having failed to timely object, waived the issue of admissibility of the testimony of the nurse practitioner. We conclude that the evidence was sufficient to convict the defendant of rape of a child. The judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE